GEER v. THE DURHAM WATER COMPANY.

(December 19, 1900.)

1. *Evidence—Immaterial—Complaint.*

> Evidence tending merely to prove a cause of action not stated
> in the complaint is immaterial.

2. *Limitation of Actions—Diversion of Water—Easement—*
   *Damages—Trespass—The Code, Sec. 155—Waters and*
   *Watercourses.*

> The unlawful diversion of river water is not a trespass on
> realty, but it is so nearly in the nature of an easement as
> to be governed by the same statute of limitations.

3. *Limitation of Actions—Railroads—Easements.*

> Acts 1895, chap. 224, relative to the limitation of actions, refer
> only to railroads.

4. *Nuisance—Abatement—Water Company—Quasi Public*
   *Corporations.*

> A water company is a *quasi* public corporation, and can not be
> abated as a nuisance.

5. *Witness—Experts—Findings of Court—Evidence.*

> The finding of trial court that a witness is an expert is not
> reviewable where there is any evidence to sustain such
> finding.

6. *Damages—Permanent—Conversion of Water—Water*
   *Company—Water and Watercourses.*

> Permanent damages may be awarded a *riparian* owner who is
> injured by the taking of water out of a river by a water
> company.

CIVIL ACTION by F. C. Geer against the Durham Water
Company, heard by Judge *Frederick Moore* and a jury, at

January Term, 1900, of DURHAM Superior Court. His Honor submitted to the jury the following issues, to-wit:

1. Has the defendant unlawfully and unreasonably diverted and used the water from Eno River and the Nancy Rhodes Branch?

2. What annual damages has plaintiff sustained by reason of such use and diversion?

3. What permanent damages has plaintiff sustained by reason of such use and diversion?

4. Is plaintiff's cause of action barred by the statute of limitations?

5. Is plaintiff's cause of action as to Eno River barred by the statute of limitations?

And the jury having responded for their verdict to the said issues as follows, to-wit: To 1, "Yes;" to 2, "One hundred ($100) dollars per year, from December 8, 1894, up to this trial;" to 3, "One thousand, one hundred and fifty ($1,150) dollars;" to 4, "No;" to 5, "No."

From judgment for plaintiff, the defendant appealed.

*Manning & Foushee,* and *Boone, Bryant & Biggs,* for the plaintiff.

*Winston & Fuller,* for the defendant.

DOUGLAS, J. This is an action brought by a lower riparian owner for damages resulting from the unlawful diversion of water, seriously interfering with the running of his mill, and greatly lessening its productive capacity. Long after the establishment of the plaintiff's mill the defendant, organized for the purpose of supplying water to the city of Durham, constructed a dam across Eno River above the plaintiff's mill, and also a dam across Nancy Rhodes Branch, a tributary of said river. The branch was used for its water supply, while the river was used to run its pumps when there

was a sufficient flow.   Some little water was taken directly from the river when needed, but not regularly; the main diversion being the water pumped from the branch, that would otherwise have flowed into the river.   The plaintiff contends that he is entitled to recover for damages arising not only from the unlawful diversion of the water, but also from its improper use in running machinery too great for the power of the river.   The defendant contends, on the other hand, that the only cause of action set out in the complaint is the unlawful diversion, and in this we think it is correct.   But the plaintiff again says that, even admitting this to be true, the diversion, being an unlawful act, renders the defendant liable for every other act connected therewith; that is, that, as the defendant had no right to divert the water from the branch flowing into the river, he had no right to use the river for the purpose of accomplishing such diversion, and that the allegation of unlawful diversion in the complaint was sufficient to include every act connected therewith, including the "uneven and irregular flow" caused thereby. The nature of the respective damages claimed by the plaintiff more clearly appears from the following extract from his elaborate brief:

"The effect of defendant's use and diversion of the water of the Nancy Rhodes Branch and Eno River is seen at plaintiff's mill in two ways:   (1) In a gradually diminishing flow of water; (2) in an uneven and irregular flow. The first is, of course, caused by the diversion of an increasing quantity of the water naturally flowing in and forming a part of Eno River, which is not returned to the river.   The second is caused by the following facts, to-wit:   The turbine wheels of the defendant, being so large, and taxing to the utmost, if not overburdening, the capacity of the river to operate them, require a very large quantity of water for

their operation, and when they are running they discharge a quantity of water from defendant's pond largely in excess of the flow of the river, and this causes a flood of water at plaintiff's mill more than he can use or hold, and goes to waste; and when defendant stops its wheels to enable its pond to be filled, and furnish it the required power to operate its wheels to force the water to a reservoir, its dam being very tight, very much less water flows down the river than is the natural and accustomed flow. The uneven and irregular flow is caused by the use of the wheels to divert the water from the branch and the river, and is an integral and inseparable part of its system and operation as now used, and as used since the construction of its works." If this statement had been in the complaint instead of the brief, it would have presented a different question, but there is no allegation whatever as to the "uneven and irregular flow." If this were merely an evidentiary fact, as claimed by the plaintiff (that is, a fact used merely to prove or explain the main allegation of unlawful diversion), the plaintiff might be correct. It must be either a mere evidentiary fact, upon which no additional damages can be awarded, or it is a separate cause of action, which must be alleged in the complaint with sufficient particularity to put the defendant upon notice. We therefore think there was error in the Court's giving the plaintiff's ninth prayer, which is as follows: "If you believe from the evidence that the defendant built a dam across Eno River above plaintiff's mill, and at times detained the water for the purpose of getting a head of water with which to run its wheel, which is used in pumping water from the Nancy Rhodes Branch; and then, if you believe from the evidence that water so detained was let loose upon plaintiff's mill property below, and that this ponding and letting loose caused an irregular flow in the river, and that this irregular

flow damaged plaintiff's property, then the Court charges you that this use of the water is an unreasonable use, and plaintiff is entitled to recover such damages as you may find he sustained from this cause." It naturally follows that all evidence tending merely to prove a cause of action not stated in the complaint is immaterial, and the exceptions thereto must be sustained. We do not mean to say that this instruction would be intrinsically erroneous under all circumstances, but that it is error in the present case, as presented to us by the pleadings. It is, therefore, unnecessary to discuss the numerous cases cited by both sides as to the unreasonable use of water apart from its diversion. It is equally useless as well as utterly impracticable to discuss separately the 94 exceptions filed in the case. Many are without merit, while others are harmless, or immaterial, in our view of the case. The greater part may not occur upon a new trial, and, in any event, should the case ever come before us again, we may express the hope that, even in the view of the appellant, there will be less error, or at least a greater condensation of error. There are, however, some important questions that we will consider.

We see no error in the issues submitted under the pleadings, especially as we can nowhere find in the record the issues tendered by the defendant. They may be there, but, if so, they have successfully eluded our search.

We do not think that the action is barred by the statute of limitations. The plaintiff recovered annual damages only for the three years next preceding the bringing of the action. While, perhaps, the taking of the water is not, in its strictest sense, an easement, which implies rather a use than a total conversion of a thing, it is so nearly in the nature of an easement as to be governed by the same general principles. This Court has repeatedly held that it requires the continuous

and adverse use of an easement for 20 years to raise the presumption of a grant, and that even then the presumption extends only to the "state and extent" of such user during said period. *Wilson v. Wilson,* 15 N. C., 154; *Pugh v. Wheeler,* 19 N. C., 50; *Gerenger v. Summers,* 24 N. C., 229; *Ingraham v. Hough,* 46 N. C., 39; *Benbow v. Robbins,* 71 N. C., 338; *Kitchen v. Wilson,* 80 N. C., 191; *Knight v. Railroad Co.,* 111 N. C., 80; *Parker v. Railroad Co.,* 119 N. C., 677; *Nichols v. Railroad Co.,* 120 N. C., 495. Acts 1895, chap. 224, refers only to railroads, leaving the law of easements unchanged as to all other parties. Although not a railroad company, we think that the defendant is a *quasi* public corporation, in its fullest sense, and that neither the public interest, nor the public safety, would permit its abatement as a nuisance. We see no reason why permanent damages can not be assessed under the general principles of equity, and, in fact, we do not understand that this right is questioned by either party. The awarding such permanent damages is equivalent to the acquisition of an easement by condemnation. *Beach v. Railroad Co.,* 120 N. C., 498; *Hocutt v. Railroad Co.,* 124 N. C., 214; *Lassiter v. Railroad Co.,* 126 N. C., 509.

We do not see how the cause of action now before us can be considered as a "trespass upon real property," under section 155 of The Code, or as amended by chapter 165 of the Laws of 1895.

We are not prepared to say that a man may not be an expert in his life's work, without a scientific education, nor that it requires expert testimony to prove that a river is higher or lower than usual. Whether a witness is an expert is, within proper limitations of law, a preliminary fact to be found by the Court below; and, when there is any evidence to sustain such finding, it is not reviewable in this

Court.  *State v. Davis,* 63 N. C., 578; *Same v. Cole,* 94
N. C., 958; *Smith v. Kron,* 96 N. C., 392; *State v. Hinson,*
103 N. C., 374; *Blue v. Railroad Co.,* 117 N. C., 644.

There does not seem to be any serious question as to the
right of the plaintiff to recover for damages arising from the
unlawful conversion.  *Pugh v. Wheeler,* 19 N. C., 50; *Wil-
liamson v. Canal Co.,* 78 N. C., 156.  The latter case is
directly in point.

For the reasons above stated, we think there was error in
the trial below.

New trial.