## LEIGH v. GARYSBURG MFG. CO.

(Filed March 17, 1903.)

1. CONTRACTS—*Easements.*

A contract allowing a timber company to construct and use a tramway on land of plaintiff for carrying away timber from land of plaintiff and any other timber that they may find convenient to move for five years does not authorize the use of the tramway for carrying other timber after the expiration of the five years.

2. DAMAGES—*Measure of Damages—Trespass.*

In an action for damages for the use of a tramway after the right to use it had expired the measure of damages is the rental value of the land occupied and in addition the decrease in rental value of other land affected by the tramway.

3. EMINENT DOMAIN—*Damages—Permanent Damages—Private Corporations—Acts 1895, Ch. 224—Acts 1887, Ch. 46, Secs. 1, 2—The Code, Secs. 2056, 2023.*

A private corporation is not entitled to condemn land for a tramway solely for its own use and have permanent damages assessed therefor, except to obtain a temporary easement *ex necessitate.*

4. EMINENT DOMAIN—*Counter-claim—Set-off—Recoupment—Easements —The Code, Sec. 244.*

In an action for damages to land a proceeding for the condemnation of an easement cannot be set up as a counter-claim.

5. EMINENT DOMAIN—*Evidence—Damages—Trespass.*

In an action to recover damages for occupying land with a tramway, the defendant is not entitled to show in mitigation of damages that he hauled freight free of charge for the tenants of the plaintiff.

ACTION by M. A. Leigh against the Garysburg Manufacturing Company, heard by Judge *George H. Brown* and a jury, at April Term, 1902, of the Superior Court of NORTHAMPTON County. From a judgment for the plaintiff, the defendant appealed.

*Thos. W. Mason* and *W. E. Daniel,* for the plaintiff.

*Day & Bell, S. J. Calvert* and *Battle & Mordecai,* for the defendant.

DOUGLAS, J.   This is an action to recover damages for the unlawful occupation of land for the use of a tramway and to enjoin its further occupation.   The defendant by a written contract dated May 4, 1894, bought all the timber measuring 14 inches at the stump standing on the plaintiff's land, at a price that practically amounted to one dollar per thousand feet, and agreed to cut and remove all said timber within the period of five years from the beginning of the contract. The contract further provided that the defendant should "have the right to build railroad or tramway across the above named lands for the purpose of removing said timber, and also any other timber that they may find convenient to move over said tramway or railroad."   The defendant finished cutting and removing all of said timber within the time allowed by the contract, but continues to use its tramway on said land for the purpose of hauling logs cut on lands not belonging to plaintiff, claiming that the right given in the contract to remove "any other timber that they might find convenient to move over said tramway or railroad," did not expire with the expiration of the contract, but continued indefinitely "so long as it has timber trees beyond said land from defendant's plant at Garysburg, and which could not be conveniently hauled to said plant except over said land."

The defendant also alleged in its answer that such was the actual agreement between the parties, and that, if not sufficiently expressed in the written contract, it was omitted by mutual mistake, and asked that the written contract be reformed in accordance therewith.   The defendant further set up as a so-called counterclaim that it had the right to condemn a right-of-way, and asked that the issue of permanent damages be submitted to the jury.   The following issues were submitted apparently without objection:

1.   Has defendant a right-of-way over the lands of plaintiff after the expiration of five years from the signing of the

contract, May 4, 1894, for purposes of removing timber off of other lands than plaintiff's?    Answer No.

2.    Was it agreed as a part of said contract that defendant should have a right-of-way over said land of plaintiff for the purpose of removing any other timber the defendant may own, and for an indefinite period?    Answer . . . . . .

3.    If so, was such agreement omitted by mutual mistake in the preparation and execution of the contract by plaintiff's husband and the draughtsman?    Answer . . . . . . .

4.    What damage has plaintiff sustained?    Answer, **We** find $387.

His Honor directed the jury to answer the first issue "No." In this we think he was correct, as the execution of the written contract was admitted, and its construction therefore became a matter of law for the court.    We think it was correctly construed.   The only consideraion expressed in the contract is the purchase price of the lumber, which is to be removed within five years.    The defendant is given "the right of ingress and egress upon and over the said tract of land for themselves, their servants, agents and teams for the purpose of cutting and carrying away the said lumber for the space of *five years from the date of this contract.*"    (The italics are ours).    The right given to build the tramway as above quoted was primarily for the convenience of removing the trees cut on the plaintiff's own land, and we can readily see that, as long as it was necessary for this purpose, she might be willing to permit the defendant to use it for any other purpose that did not cause any additional damage or inconvenience.

But this is entirely different from assuming that the plaintiff would, without compensation or resulting benefit to herself, be willing to permit the tramway to remain indefinitely, with all its attendant risk and inconvenience, solely for the benefit of the defendant.

Placing upon the contract such a reasonable construction as is consistent with all its provisions, we think that the defendant's right to use the tramway expired with the contract on May 4, 1899.

At the conclusion of the defendant's evidence offered in support of the socalled counterclaim set out in the answer asking a reformation of the written contract, the plaintiff demurred thereto. The court below adjudged as follows:

"1. That the evidence is insufficient to justify a reformation of the contract.

"2. That it appears from McNeill's own evidence that he was satisfied with and executed the contract on behalf of the defendant, after the words inserted by Leigh were stricken out, and that the contract in evidence as executed was the contract of the parties.

"3. That there is no evidence that the provision contended for by defendant was omitted by mutual mistake.

"4. That the contract, if amended in the manner and form as contended for by defendant, would be void for indefiniteness and uncertainty of duration."

The court being of opinion with the plaintiff, sustained the demurrer and the defendant excepted and appealed.

Again we think his Honor was correct, as the burden of proving the second and third issues rested on the defendant. Whatever chaffering may have occurred between the parties prior to the execution of the contract, there was no proof of fraud or mutual mistake in its execution.

The record further states as follows: "Upon the issue of damage, the court charged the jury at length and stated that the rule of damage would be the actual rental value of the land actually occupied by defendant since May 4, 1899, and that if the rental value of the cleared land was at all reduced or injured by the presence of the road since May 4, 1899, that is an element of damage. To this charge the defendant excepted."

We see no error in the charge as given under the circumstances of this case, as there was testimony tending to prove both elements of damage.

Again we quote from the record as follows: "In regard to that section of the answer seeking to condemn right of way, claimed by the defendant's counsel under sections 2023 and 2056 of The Code and amendments thereto, the court held that such allegation in the answer was not a counterclaim nor the subject of equitable relief, and that the court in this action had no original jurisdiction to grant any such relief, and that defendant had no power of eminent domain in the charter, and the court overruled the defendant's contention in that respect. Defendant excepted."

We think the court was correct in its ruling. The defendant was not a *quasi* public corporation, and its tramway was in no sense impressed with a public use. It did not profess to be a common carrier, but on the contrary expressly stated that the tramway was built solely to haul its own timber. Therefore it was not entitled to demand the assessment of permanent damages under chapter 224 of the Public Laws of 1895. The most that it could obtain was a temporary easement *ex necessitate* under Section 2056 of The Code as amended by Chapter 46 of the Public Laws of 1887; and this could be obtained only by a strict compliance with the provisions of the statute. A proceeding for the condemnation of an easement can never be a counterclaim, as defined in Section 244 of The Code, as it has none of its essential characteristics. It is not even a cause of action. The owner of the land may have a cause of action, and when he brings his action the defendant may obtain an easement by demanding the assessment of permanent damages under the Act of 1895, or the general equity jurisdiction of the court, *provided the easement is impressed with a public use.* We are now considering easements that are purely statutory in their nature and not those arising in grant or prescription. *Lassiter v.*

*Railroad,* 126 N. C., 509; *Geer v. Water Co.,* 127 N. C., 349. In all other cases the easement may be obtained only by the method prescribed by the statute in the nature of a special proceeding. While the question is not before us, it is somewhat singular that the Act of 1887, Ch. 46, provides that: "Cartways, tramways or railways for the removal of timber shall continue for a period not longer than five years."

The defendant offered to prove, we presume in mitigation of damages, that the defendant hauled, free of charge, freight belonging to some of the plaintiff's tenants. This testimony was properly excluded, as it did not tend to show that the plaintiff herself derived any benefit therefrom.

The judgment of the court below is

Affirmed.